UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **DIANE MARIE REYNOLDS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 20-10165-FDS |
| ) | |
| **JASON ANGELOTTI,** ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

**SAYLOR, C.J.**

This is a *Bivens* action filed by a *pro se* plaintiff. Diane Reynolds contends that Jason Angelotti, a Disclosure Manager for the Internal Revenue Service, violated her federal constitutional and statutory rights by, among other things, denying her request to amend her IRS Individual Master File. Angelotti has moved to dismiss the complaint for lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and insufficient service of process.

For the reasons set forth below, that motion will be granted.

**I.     Background**

The following facts are presented as alleged in the complaint unless otherwise noted.

Diane Reynolds is a resident of Massachusetts. (Am. Compl. at 2).[1] Jason Angelotti is a

---

[1] Reynolds has amended the first two pages of the complaint. Those amended pages correct the spelling of Angelotti's name. The Court will refer to the amended complaint when relying on the first two pages and will otherwise refer to the original complaint.

Disclosure Manager for the Internal Revenue Service.  (*Id.*).  He works at a Disclosure Office for the IRS in Florida.  (*Id.*).

The allegations in the complaint center on correspondence between Reynolds and Angelotti in 2018.  That year, Angelotti allegedly refused to allow Reynolds to make modifications to her Individual Master File.[2]  It appears that the modifications she tried to make stem from her belief that she is a victim of identity theft.  According to the complaint, "another person/entity" used her "name control and SSN" to "establish a business entity" attached to her Individual Master File.  (Compl. Ex. 1, at 3; *see also* Compl. Ex. 4 ("Identity Theft Affidavit")).[3]  Her Individual Master File allegedly "fail[s] the mandatory standard validation checks for [her] name control and SSN."  (Compl. Ex. 1, at 3).

The complaint specifically alleges that Angelotti denied Reynolds of her right "to request amendment of certain erroneous personal information" and her right "to appeal his adverse determination of [her] request to amend."  (Compl. at 5).  It further alleges that Angelotti refused "to protect [her] from Identity Theft" and "to provide [her] with answers to [her] lawful questions or to provide the name and address of the person that can answer [her] lawful questions."  (*Id.*).  Those events, according to the complaint, occurred at Angelotti's office in Florida.  (*Id.* at 4).

On January 27, 2020, Reynolds filed this action against Angelotti in his individual capacity under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  The complaint alleges that he violated her constitutional rights under the First, Fifth,

---

[2] According to Angelotti, the Individual Master File is "the record the IRS maintains on every individual income tax filer."  (Def. Mem. at 2 n.3).

[3] The complaint includes several exhibits, including one that further details Reynolds's allegations against Angelotti.  The Court will consider those allegations to be part of her complaint.

2

and Fourteenth Amendments. (*Id.* at 3-4). It further alleges that he violated her rights under the Privacy Act of 1974, 5 U.S.C. § 552a. (*Id.* at 4). It seeks, among other relief, "[a]n immediate injunction barring the IRS from overriding the permanent invalid SSN freeze placed on the IMF account regarding [Reynolds] due to failure of the Mandatory Standard Validation Check for [her] name control/SSN." (*Id.* at 5).[4]

Angelotti has moved to dismiss the complaint. He contends that it should be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, under Fed. R. Civ. P. 12(b)(5) for insufficient service of process, and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.    Legal Standard

To survive a motion to dismiss, a complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally*

---

[4] An exhibit to the complaint indicates that money damages or punitive damages "will need to be determined based on damages caused by the failure of the IRS to properly validate the IMF account it is maintaining on [Reynolds], to inform [her] of who the other 'taxpayer' is using [her] name control and SSN so [she] may file a formal police report, [and to take] action on an account known to be invalid for [her], and any other damages associated with the use of an invalid account regarding [her]." (Compl. Ex. 1, at 4).

That exhibit also indicates that Reynolds seeks "a re-examination of [her] request to amend personal information . . . , to be provided with information regarding who in the IRS can answer [her] lawful questions, and to be provided [her] full rights under the Privacy Act." (*Id.*). She further requests that the case be remanded to Angelotti to correct his alleged errors. (*Id.*).

*Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

A document filed by a *pro se* party should be "liberally construed."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Specifically, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Id.* (quoting *Estelle*, 429 U.S. at 106); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

### III.  Analysis

Defendant first contends that the complaint must be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

A plaintiff bears the burden of establishing that the court has personal jurisdiction over a defendant.  *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002).  When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the court may use several standards to assess whether a plaintiff has carried that burden:  the "prima facie" standard, the "preponderance of the evidence" standard, or the "likelihood" standard.  *See id.* at 50-51, 51 n.5; *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145-46 (1st Cir. 1995).  Where, as here, the court is called to make that assessment without first holding an evidentiary hearing, the prima facie standard is applied.  *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001).

Under that standard, the court takes the plaintiff's "properly documented evidentiary

proffers as true and construe[s] them in the light most favorable to [the plaintiff's] jurisdictional claim." *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (citing *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008)). The plaintiff may not "rely on unsupported allegations in its pleadings." *Id.* (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006)) (internal alteration omitted). Instead, the plaintiff "must put forward 'evidence of specific facts' to demonstrate that jurisdiction exists." *Id.* (quoting *Platten*, 437 F.3d at 134). Facts offered by the defendant "become part of the mix only to the extent that they are uncontradicted." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) (quoting *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007)).

The exercise of personal jurisdiction over a defendant must be authorized by statute and consistent with the due-process requirements of the United States Constitution. *See A Corp.*, 812 F.3d at 58 (citing *Daynard*, 290 F.3d at 52). Consistent with those requirements, a court may exercise either general or specific jurisdiction. *See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 35 (1st Cir. 2016).

> Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities. General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.

*Swiss Am. Bank*, 274 F.3d at 618 (internal citations and quotation marks omitted).

As to general jurisdiction, the "paradigm forum" for an individual is his domicile. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Here, the complaint does not include any allegations concerning defendant's domicile. It identifies his address as an IRS Disclosure Office in Florida. (Am. Compl. at 2). Presumably, that is where he lives. Furthermore, it does not otherwise allege any "continuous and systematic activity" by

defendant in Massachusetts such that the exercise of general jurisdiction over him would comport with federal due-process demands. Accordingly, the Court may not exercise general jurisdiction over defendant.

As to specific jurisdiction, due process requires that a plaintiff establish three conditions:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must be reasonable.

*Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016) (quoting *Phillips*, 530 F.3d at 27) (internal alteration and citation omitted).

Here, the claims arise not out of defendant's activities in Massachusetts, but out of events that occurred at his office in Florida. (Compl. at 4). Indeed, plaintiff reiterates that allegation in her opposition: "[A]s for the location of the violation of Plaintiff's essential rights, those injuries occurred at Mr. Angelotti's place of business located in Plantation, Florida." (Pl. Opp. at 5).

In any event, even assuming plaintiff has shown relatedness based on the fact that defendant corresponded with plaintiff in Massachusetts, she has not shown purposeful availment. *See LP Sols. LLC v. Duchossois*, 907 F.3d 95, 103 (1st Cir. 2018) (assuming that the plaintiff had satisfied relatedness before concluding that it had not shown purposeful availment). Wholly absent from the complaint are any allegations of defendant "purposefully and voluntarily" directing his activities towards Massachusetts such that "he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *Id.* (quoting *Swiss Am. Bank*, 274 F.3d at 624). "There is no indication nor even an allegation" that defendant availed himself "of any of the protections of Massachusetts law or any other services provided by the state." *Phillips*, 530 F.3d at 29.

6

It appears that defendant's only connection to Massachusetts is his correspondence with plaintiff. It is true that purely remote contacts may be sufficient to sustain personal jurisdiction under some circumstances. *See C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 68 (1st Cir. 2014). But that conclusion depends on the "number and duration of the remote contacts." *Id.* Here, the letters sent by defendant in response to plaintiff's inquiries do not constitute the "substantial connection" necessary to find that defendant purposefully availed himself of the benefits of conducting business in Massachusetts. *See id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *Phillips*, 530 F.3d at 29 ("It stretches too far to say that Prairie Eye, by mailing a contract with full terms to Massachusetts for signature and following up with three e-mails concerning the logistics of signing the contract, should have known that it was rendering itself liable to suit in Massachusetts.").

Because plaintiff has not satisfied the purposeful-availment prong, the Court need not consider whether the exercise of specific jurisdiction would be reasonable. *See LP Sols. LLC*, 907 F.3d at 107 n.8 (declining to consider reasonableness after assuming that plaintiff satisfied the relatedness prong but concluding that it did not satisfy the purposeful-availment prong).

Accordingly, the exercise of personal jurisdiction over defendant would not comport with due process. The Court will therefore grant defendant's motion to dismiss.[5]

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

---

[5] Because the exercise of personal jurisdiction over defendant would not satisfy due process, the Court need not consider whether personal jurisdiction is appropriate under the potentially "more restrictive" Massachusetts long-arm statute. *See A Corp.*, 812 F.3d at 59. Likewise, it need not consider whether the complaint should also be dismissed for failure to state a claim or insufficient service of process.

**So Ordered.**

Dated:  April 5, 2021

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court